THEODORE PLESTCHEEFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GUENDOLEN C. PLESTCHEEFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 80025, 80026.   Promulgated February 17, 1937.

*Cyril D. Hill, Esq.*, and *A. G. Elder, Esq.*, for the petitioners.
*S. B. Anderson, Esq.*, for the respondent.

OPINION.

DISNEY: The respondent determined a deficiency in income tax for the year 1932 against the petitioners in the sum of $309.22. The issue is the same in both cases and is as to the deductibility of taxes assessed in 1931 and paid in 1932 on real estate in the State of Washington. The facts are agreed and stipulated and the cases

consolidated for hearing. The facts, so far as material to the issues herein, are as follows:

(3) The said petitioners, Theodore Plestcheeff and Mrs. Guendolen Plestcheeff, are and throughout the year 1932, were husband and wife.

(4) Mr. J. Carkeek, the father of the petitioner, Mrs. Guendolen C. Plestcheeff, died on April 5, 1931, and by will devised to her, and the said petitioner acquired under the said will, certain real estate situated in the state of Washington. The decree of distribution confirming the said devise was entered in the Superior Court of the State of Washington, for King County, on December 31, 1931.

(5) During the taxable year 1932 the books of the petitioners were kept and their income tax return for the said year was made on the basis of cash receipts and disbursements.

(6) During the year 1932 the petitioner Mrs. Guendolen C. Plestcheeff paid the amount of $4,266.69 for and on account of general property taxes on the said real estate which were assessed in the year 1931.

(7) The said real estate taxes paid by the petitioner Mrs. Guendolen C. Plestcheeff in the amount of $4,266.69 during the year 1932 were claimed as a deduction in computing taxable net income of the petitioners for the said year.

(8) The said deduction was disallowed by the respondent on the theory that the ownership of property in the state of Washington on March 1st is the event which determines the liability for both real estate and personal property taxes, and fixes the amount thereof, although such amount is not ascertainable on such date.

The only error assigned is that in computing petitioners' income tax liability for 1932 the Commissioner disallowed as a deduction the sum of $4,266.69, the amount paid by the petitioner Guendolen C. Plestcheeff in 1932 for real property taxes due the State of Washington and its political subdivisions.

The Revenue Act of 1932 provides in section 23:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*         \*         \*         \*         \*         \*         \*

(c) TAXES GENERALLY.—Taxes paid or accrued within the taxable year   \*   \*   \*

The title to the real estate upon which the taxes in question were paid in 1932 passed to Guendolen C. Plestcheeff on April 5, 1931, the date of the death of her father, section 1366 of Remington's Revised Statutes of the State of Washington providing in part:

When a person dies seized of lands, tenements or hereditaments, or any right thereto or entitled to any interest therein in fee or for the life of another, his title shall vest immediately in his heirs or devisees, subject to his debts, family allowance, expenses of administration and any other charges for which such real estate is liable under existing laws. No administration of the estate of such decedent and no decree of distribution or other finding or order of any court shall be necessary in any case to vest such title in the heirs or devisees, but the same shall vest in the heirs or devisees instantly upon the death of such decedent: provided that no person shall be deemed a devisee until the will has been probated.  \*   \*   \*

Other sections of said statutes provide in part:

The assessment year contemplated in this act shall commence on the first day of March and end on the last day of February in each year * * *. [Sec. 11242.]

On the first Monday in January next succeeding the date of levy of taxes the county auditor shall deliver to the county treasurer the tax-rolls of his county for such assessment year with his warrant thereto attached, authorizing the collection of said taxes, taking his receipt therefor, and said books shall be preserved as a public record in the office of the county treasurer. The amount of said taxes levied and extended upon said rolls shall be charged to the treasurer in an account to be designated as treasurer's "Tax Roll Account" for ——————— and said rolls with the warrants for collection shall be full and sufficient authority for the county treasurer to receive and collect all taxes therein levied: Provided, that the county treasurer shall in no case collect such taxes or issue receipts for the same or enter payment or satisfaction of such taxes upon said assessment-rolls before the first Monday in said February following. [Sec. 11243.]

Section 11265 of said Remington's Revised Statutes provides:

*Life of lien—Between grantor and grantee—Lien of personalty tax—Following property—Personalty lien upon realty.*

The taxes assessed upon real property shall be a lien thereon from and including the first day of March in the year in which they are levied until the same are paid, but as between a grantor and grantee such lien shall not attach until the first Monday in February of the succeeding year. The taxes assessed upon each item of personal property assessed shall be a lien upon such personal property from and after the date upon which the same is listed with and valued by the county assessor, and no sale or transfer of such personal property shall in any way affect the lien for such taxes upon such property. * * *

Section 11235 of Remington's Compiled Statutes of Washington, 1922, provides:

For the purpose of raising a revenue for the state, county indebtedness, county current expense, school, road and other purposes, the board shall, at said October session, levy a tax on all taxable property in the county, as shown by the assessment-roll, sufficient for such purposes: * * *

No brief in behalf of respondent is filed, but in an explanatory statement accompanying deficiency notice, in justification of his determination disallowing the claimed deduction of $4,266.69, he cites and relies on General Counsel's Memorandum 6667, Cumulative Bulletin VIII–2, p. 94, to the effect that the ownership of property in the State of Washington on March 1 is the "event" which determines the liability for both real estate and personal property taxes and fixes the amount, although not ascertainable on that date. The effect of the respondent's contention is that the law permits one to deduct only his own taxes, but that he can not deduct taxes owed by some one else, such as his predecessor or successor in title. That this is a settled principle of law is, of course, undoubted, and the question

here is as to whether the taxes in question were owed by Guendolen C. Plestcheeff, or her father and predecessor in title, J. Carkeek. *Klickitat Warehouse Co.* v. *Klickitat County*, 42 Wash. 299; 84 Pac. 860, and *City of Puyallup* v. *Lakin*, 45 Wash. 368; 88 Pac. 578, were relied on in the above General Counsel's memorandum; also *Sloan Shipyards Corporation* v. *Thurston*, 111 Wash. 361; 190 Pac. 1015, a personal property case. But as to those cases, in *Wilberg* v. *Yakima County*, 132 Wash. 219; 231 Pac. 931, the court stated:

\* \* \* As was noted in *Raymond* v. *King County* supra, the case of *State of Washington* v. *Snohomish County*, 71 Wash. 320, 128 P. 667, apparently laid down a rule in regard to real property different than that announced in *Klickitat Warehouse Co.* v. *Klickitat County*, supra; *City of Puyallup* v. *Lakin*, supra; and *Mills* v. *Thurston County*, supra, which were cases involving the lien of personal property taxes.

In *State of Washington* v. *Snohomish County*, 71 Wash. 320, it was stated in part:

\* \* \* The fact that the lien of the tax so created is by relation attached to specific property as of the date of the initiation of the process on March 1st cannot do away with the necessity of pursuing the whole statutory proceeding before any tax is created so as to attach as a lien as of that or any date. While the state has power, for the purposes of the lien, to treat the entire proceeding as having been taken at any given time, that fact does not do away with the necessity of any step in the proceeding. It seems self-evident that there can be no valid or effective lien for a tax until there is a valid tax in some specific amount. "For, in the nature of things, no tax or assessment can exist so as to become a lien or encumbrance upon real estate until the amount thereof is ascertained and determined." Black on Tax Title (2d Ed.) § 189. \* \* \*

\* \* \* \* \* \* \*

We are not blind to the fact that a contrary view finds apparent support in the decisions of this court in *Klickitat Warehouse Co.* v. *Klickitat County*, 42 Wash. 299, 84 Pac. 860, and *City of Puyallup* v. *Lakin*, 45 Wash. 368, 88 Pac. 578. Those cases, however, construe only that part of the lien statute relating to taxes on personal property. \* \* \* The lien is thus by statute made complete, perfect, and enforceable prior to the levy for the current year. Every purchaser of personal property subsequent to the assessment, therefore, takes subject to a perfected and indestructible lien. No such provision for acceleration and computation is found as to real property taxes. The lien as to them is inchoate and unenforceable until the tax has been fully imposed by the levy for the current year. The passage of the title to the state in the interim, therefore, checks the ripening of the inchoate into a matured and perfect lien, makes it incapable of enforcement, in effect aborts and destroys it. The distinction seems plain. Moreover, as observed by Judge Donworth in *United States* v. *Pierce County* supra: "Further support for the position that the tax lien did not attach is found in the provision of the statute that 'as between a grantor and grantee such lien [of the taxes on real property] shall not attach until the first Monday of February of the succeeding year,' and the United States became the grantee long before that date." Here also the state became the grantee long prior to February of the succeeding year. \* \* \*

The *Snohomish County* case is cited with approval in *Ballard* v. *Wooster*, 182 Wash. 408; 45 Pac. (2d) 511, and in *In re Graley's Estate*, 183 Wash. 268; 48 Pac. (2d) 634, it is distinguished because in the latter case there *had been a levy*, the court saying as to the *Snohomish County* case: "The court concluded that under the law the tax for 1907 could not become fixed until the levy in October of that year * * *."

In *State* v. *City of Hoquiam*, 155 Wash. 678; 287 Pac. 670, the court considered the question of the time of incidence of taxes in a matter wherein property was taken under condemnation proceedings. It cited at length *Bethany Presbyterian Church* v. *City of Seattle* (Wash.), 282 Pac. 922, disclosing that therein that court had held that the church, the property of which was condemned and taken, had a right to the condemnation award undiminished by the taxes for the reason that the title passed on January 16, 1929, whereas the statute provided that as between grantor and grantee the lien should not attach until the first Monday in February. The court, therefore, held in the *Hoquiam* case that since the title to the property had not yet passed (after first Monday in February 1930), the 1929 taxes, as well as the 1928 taxes, should be deducted from the condemnation award—thus doubly emphasizing in the cited case and the decided case that in that state the incidence of the taxes as between grantor and grantee was upon the first Monday in February.

In *Puget Sound Power & Light Co.* v. *City of Seattle*, 201 Pac. 449, 451, referring to the *Snohomish County* case, *supra*, the Supreme Court of Washington again emphasized the principles of that case by referring to it as follows:

* * * It was pointed out that in giving a lien for a real estate tax the statute contemplates a levy as well as an assessment, while as to personal property only an assessment is required; and it was decided that as the levy had not been made at the time of the purchase the state took the real property free of any lien for taxes. * * *

In *John H. Hord*, 33 B. T. A. 342, 347, we pointed out that:

* * * The decisions have been uniformly to the effect that the ownership of the property on the date fixed by state law as the date of tax incidence determines the right of a taxpayer to a deduction under the Federal income tax law. The owner on such basic date is entitled to the deduction for taxes paid by him.

The question for our determination therefore is the basic date for tax incidence in the State of Washington.

In our opinion, the taxes assessed on real estate for the year 1931 did not, under the statutes of Washington as construed by its courts, attach and become a perfected lien on said realty prior to October 1931, in which month the tax levy is made in that state.

It is true that in *Grand Hotel Co.*, 21 B. T. A. 890, there was involved a case from the State of Washington and that therein we said that March 1 is the event which determines the liability for real estate taxes and fixes the amount, although not ascertainable on that date. But in that case, as we stated, "the taxes were assessed, levied, and accrued during the year 1921, while J. E. Ransome was the owner of the hotel real estate"—whereas the petitioner there acquired the property from J. E. Ransome on February 10, 1922, after which it paid the taxes for 1921 and claimed same as a deduction. It was not necessary in that case, therefore, to decide as to when in 1921 was the date of the tax incidence. As above seen, the statutes of that state provide that the assessment year ends on the last day of February, provide for the tax levy in October, and further provide that the tax lien upon real property shall not attach as between grantor and grantee until the first Monday in February, so that it is seen that in any event in the *Grand Hotel Co.* case the date of tax incidence had passed prior to passage of title. Neither the *Snohomish County* case nor the other cases hereinabove cited were called to our attention in *Grand Hotel Co. Grand Hotel Co.* mentions *Crown Willamette Paper Co.*, 14 B. T. A. 133, and *Arcade Department Store*, 18 B. T. A. 1172, but in the former case we specifically stated that it was not necessary to determine the exact date within the taxable year when the taxes became a lien under the laws of Oregon and Washington. Moreover, personal property taxes were involved. *Arcade Department Store* was also a personal property tax case.

In the light of *State of Washington* v. *Snohomish County, supra*, and the other cases cited above, consistent therewith, we are impelled to hold that the date of tax incidence on real property in that state, and in this case, was not until after Mrs. Plestcheeff received the real estate by devise from her father on April 5, 1931. She paid said taxes in 1932 and she and her husband took and, in our opinion, under the Washington statutes and decisions, and by virtue of section 23 (c) of the Revenue Act of 1932, were entitled to take as a deduction, in computing their net taxable income for 1932, the $4,266.69 taxes so paid. The taxes were owed by Mrs. Plestcheeff and she and her husband had a right to deduct same.

We, therefore, are of the opinion and hold that the respondent committed error in disallowing the deduction claimed by the petitioners.

Reviewed by the Board.

*Judgment of no deficiency will be entered.*