MINNIE M. COWARD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87465. Promulgated May 31, 1939.

*G. A. Wuerfel, C. P. A.,* for the petitioner.
*L. A. Spaulding, Esq.,* for the respondent.

### OPINION.

LEECH: Petitioner asks redetermination of a deficiency of $2,020.70 in income tax for the calendar year 1934, of which she contests only $1,836.61. The issue is whether petitioner is entitled to deduct, from her gross income, the sum of $8,450.31, consisting of taxes assessed for and paid during 1934 on real estate situated in the State of New Jersey.

The facts have been stipulated and are found accordingly.

Petitioner kept her books and filed her income tax return on the

basis of cash receipts and disbursements. On October 16, 1933, she acquired title to real estate located at 9 Garrison Avenue, Jersey City, New Jersey; and on December 8, 1933, she acquired title to another parcel of realty located at 88 Kensington Avenue, Jersey City, New Jersey. She continued to own these properties throughout 1934.

Petitioner paid the real estate taxes due on the two properties during the calendar year 1934 as follows:

|  | Date paid | Amount |
|---|---|---|
| 9 Garrison Avenue, Jersey City, N. J. | 2/6/34 | $1,261.92 |
|  | 5/1/34 | 1,261.91 |
|  | 8/14/34 | 1,891.56 |
|  | 11/8/34 | 1,000.00 |
| Total | | 5,415.39 |
| 88 Kensington Avenue, Jersey City, N. J. | 2/6/34 | 878.67 |
|  | 8/13/34 | 878.66 |
|  | 11/8/34 | 1,277.59 |
| Total | | 3,034.92 |

The gross rental income from 9 Garrison Avenue in the sum of $19,963.75 and from 88 Kensington Avenue in the sum of $9,147.87 for the full calendar year 1934 was included by petitioner in her return for that year.

Respondent disallowed petitioner's deduction of $8,450.31 for the real estate taxes on these properties assessed for and paid during 1934 on the ground that they were not petitioner's taxes but those of her grantors and thus constituted part of the cost of the properties to her.

The material part of section 23 (c) of the Revenue Act of 1934 is as follows:

SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

\*    \*    \*    \*    \*    \*    \*

(c) TAXES GENERALLY.—Taxes paid or accrued within the taxable year, \* \* \*.

It is well settled that if the purchaser of real estate pays taxes thereon which have accrued prior to the date of purchase, such payments are an additional cost of the property to the purchaser and are therefore not deductible by him as his taxes. *Helvering* v. *Missouri State Life Insurance Co.*, 78 Fed. (2d) 778; *Texas Coca-Cola Bottling Co.*, 30 B. T. A. 736; *Leamington Hotel Co.*, 26 B. T. A. 1004.

The decisive question thus becomes one of determining whether the New Jersey real estate taxes for 1934 "accrued" before or after the respective dates of the conveyances to petitioner. The relevant New Jersey statutes are as follows:

Compiled Statutes of New Jersey, sec. 208–66d (202):

\* \* \* All property shall be assessed to the owner thereof with reference to the amount owned on the first day of October in each year \* \* \*.

*Ibid.*—sec. 208–66d (401):

The assessor shall ascertain the names of the owners of all real property situate in his taxing district, and shall, after examination and inquiry, determine the full and fair value of each parcel * * * at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on the first day of October next preceding the date on which the assessor shall complete his assessments, as hereinafter required.

*Ibid.*—sec. 208–66d (501):

The assessor shall begin the work of making assessments upon real and personal property upon the first day of October in each year and shall complete the same by the tenth day of January following, on which date he shall attend before the county board of taxation and file with said board his complete assessment list * * *.

Further pertinent sections of the Compiled Statutes of New Jersey are as follows:

Sec. 208–444a (6). All unpaid taxes on lands, with interest, penalties and costs of collection shall be a lien on the land on which they are assessed on and after the first day of December of the year in which they fall due.

Sec. 208–66d (503). *Notification by State Comptroller of amount for schools.* 503. The State Comptroller shall, on or before the first day of February in each year, transmit to the State Board of Education and to the county collector of each county a statement of the amount of tax appropriated by the State for that year and to be raised by taxation for the public schools; the State Comptroller shall apportion said tax among the several counties in proportion to the amount of taxable real and personal property of said counties respectively as shown by the last annual abstracts of ratables prepared by the State Board of Taxes and Assessment and transmitted by said board to the State Comptroller; the State Comptroller shall also, on or before the first day of February annually, transmit to each county collector a statement of the amount, if any, necessary to be raised by general taxation for State purposes in said county, which the State Comptroller shall apportion in the same manner as the school tax, adding thereto the deficiency, if any, of the previous year; the county collector shall lay said statements before the county board of taxation of his county on or before the tenth day of February in each year, and said board shall apportion the amount required among the taxing districts, as in this act directed, charging the deficiency, if any, to the deficient taxing districts; * * *.

Sec. 208–66d (504). *Total amount in counties.* 504. The county collector of each county shall, on or before the first day of March in each year, transmit to the county board of taxation a statement of the total amount appropriated by the board of chosen freeholders to be raised for current expenses, debt and interest, public works and for all other county purposes, and all amounts otherwise required by law to be raised by taxation in that year for county purposes. The county board of taxation shall apportion the tax among the taxing districts as in this act directed.

Sec. 208–66d (507). *Revising tax lists and duplicates.* 507. Upon the filing of the assessment lists and duplicates by the assessors with the county board of taxation as hereinbefore provided, said board shall meet for the purpose of examining, revising and correcting said tax lists and duplicates. Any assessor shall attend before said board at such time and place as it may direct, and shall, under the direction and supervision of such board, make up and prepare cor-

rected tax lists and duplicates. Such board may adjourn from time to time in the discharge of its duties, and shall have the power, after investigation, to revise, correct and equalize the assessed value of all property in the respective taxing districts; to increase or decrease the assessed value of any property not truly valued, to add to said lists and duplicates any property which has been omitted or overlooked, at its true value, and in general to do and perform all acts and things necessary for the taxation of all property in said county equally and at its true value. * * *

Sec. 208-66d (508). *Table of aggregates.* 508. The county board of taxation shall, on or before the tenth day of March, fill out a table of aggregates copied from the duplicates of the several assessors and enumerating the following items: * * * (22) the tax rate per one hundred dollars of valuation in each taxing district. * * *

Sec. 208-66d (606). It shall be the duty of the collector, in person or by deputy, forthwith after the first day of December to enforce the payment of all taxes on personal property * * *; where the tax is upon real estate the person assessed may be relieved from the levy [by] showing he was not the owner at the time the tax became a lien * * *.

Real estate taxes are payable semiannually in New Jersey, on April 1 and December 1. (Sec. 208-66d (602).) In the case of the transfer of property the seller or owner shall be liable for such proportion of the current year's taxes, as the time between January 1 and the date of the deed bears to the full calendar year. (Sec. 208-66d (514).)

The above statutes first became law in New Jersey in 1918.

Respondent supports his action under G. C. M. 15305, C. B. XIV-2, p. 80, which provides, *inter alia,* that, as to taxpayers on the accrual basis, New Jersey real estate taxes accrue October 1 preceding the year in which the tax falls due. Obviously, this ruling can not change the law. *Manhattan General Equipment Co.* v. *Commissioner,* 297 U. S. 129.

It proceeds on the premise that taxes "accrue" when they are assessed. At least as applied to the facts here, that theory is wrong. As stated by the Circuit Court of Appeals for the Seventh Circuit in *Commissioner* v. *Patrick Cudahy Family Co.,* 102 Fed. (2d) 930, affirming 36 B. T. A. 1147, where the date for accrual of Wisconsin realty taxes was in issue:

It is clear that the entire emphasis is placed by the Commissioner upon the fact of assessment, under the Wisconsin Act, as of May 1. We are of opinion that that fact alone is not controlling. "The word 'assessment,' as used in the decisions and statutes, has various meanings. Properly speaking it does not include the levy of taxes although sometimes the words 'assess,' 'assessed,' or 'assessment' are used in a statute as including both the levy and the assessment. An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. It does not, therefore, of itself lay the charge upon either person or property, but it is a step preliminary thereto, and which is essential to the apportionment. As the word is more commonly employed, an assessment consists in the two processes of listing the persons, property, etc., to be taxed, and of estimating the sums

which are to be the guide in an apportionment of the tax between them." Cooley on Taxation (4th Ed.) Vol. 3, section 1044. See also *Evansville and I. R. Co.* v. *Hays*, 118 Ind. 214.

Thus here, the 1934 taxes certainly had not "accrued" when either of the two parcels of realty were conveyed to petitioner.

The work of assessing the taxes for that year began here on October 1, 1933, and was not completed until January 10, 1934. It is true the first step in assessing them was taken on October 1, 1933, but:

* * * The assessment as originally made by the assessor does not become the assessment upon which the taxes are finally paid until after the county board of taxation has, under section 507, revised, corrected, equalized values, and increased or decreased the assessed value of any property not truly valued, and added property which has been omitted or overlooked, and, in general, until it has done all things necessary for the taxation of all property equally and at its true value. [*Middletown Tp.* v. *Ivins*, 102 N. J. L. 36; 130 Atl. 648.]

Compiled Statutes of New Jersey, sec. 208–66d (507), referred to above, indicates that the county board does not meet for this purpose until after the assessors have filed their lists with the board, which is done, as required by section 208–66d (501), on January 10 of the taxable year. Section 208–66d (503) provides that the state comptroller shall, on February 1, send the county collector a statement of the amount to be raised by taxes, whereupon the collector is to lay this information before the board for apportionment among the various taxing districts. Thereafter, and by March 10, the county board must, on the basis of all the above mentioned data, fix the tax rate per $100 of assessed valuation. Sec. 208–66d (508).

We are aware, as respondent argues, that before the New Jersey tax law revision of 1918, the date upon which tax assessments were to commence in New Jersey was May 20, and that after such revision, that date was October 1 of the year preceding the tax year. We note also that, though taxes are not a personal liability in New Jersey, under the new law, as well as the old law, it has been there held that property was liable to taxation in the name of the person who was the owner thereof on the date upon which the assessment was to commence. *Shippen* v. *Hardin*, 34 N. J. L. 79; *Broeck* v. *Jersey City*, 44 N. J. L. 156; *Jersey City* v. *Montville Tp.*, 84 N. J. L. 43; 85 Atl. 838; *United States* v. *Hoboken*, 29 Fed. (2d) 932. But section 208–66d (606) reads that "where the tax is upon real estate the person assessed may be relieved from the levy [by] showing he was not the owner at the time the tax became a lien." Thus, no liability for the 1934 taxes could irrevocably attach to the owner of these properties until December 1, 1934, the statutory lien date (sec. 208–444a (6), *supra*), and by virtue of the above provision, the persons who sold the properties to petitioner could have had any levy for 1934

made against them in 1933 removed. See also section 208–66d (514), *supra.*

This Board and the Circuit Courts of Appeal have uniformly held, on cases coming from states other than New Jersey, that taxes do not accrue until they have become a lien on the property. In the recent case of *Theodore Plestcheeff*, 35 B. T. A. 508; affd., 100 Fed. (2d) 62, we distinguished the lien date from the day appointed for the beginning of the work of assessment and held that, under the laws of the State of Washington, the tax incidence occurred on the lien date. See also *Lifson* v. *Commissioner*, 98 Fed. (2d) 508, affirming 36 B. T. A. 593; *Helvering* v. *Missouri State Life Insurance Co., supra; Texas Coca-Cola Bottling Co., supra.* In any event, we can not conceive that such taxes "accrue" within the meaning of section 23 (c), *supra,* on October 1, of the prior year, when the first step in the process of assessment occurs.

We conclude that the disputed taxes "accrued" in 1934, which was after the properties against which they were assessed had been conveyed to petitioner.[1] It follows that petitioner is entitled to deduct the amount of them as her taxes.

*Decision will be entered under Rule 50.*

---

[1] This conclusion is not *contra* to but implicitly sustained by the decision in *United States* v. *Anderson,* 269 U.S. 422. See *Theodore Plestcheeff, supra,* and *Commissioner* v. *Patrick Cudahy Family Co., supra.*